UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALLISON MENDENHALL, | NO. C16-5851-TSZ-JPD |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

Plaintiff Allison Mendenhall appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

REPORT AND RECOMMENDATION - 1

# I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a fifty-five year old woman with a high school education and some college. Administrative Record ("AR") at 77. Her past work experience includes employment as an insurance billing clerk. AR at 48-49, 70. Plaintiff was last gainfully employed in 2009. AR at 48.

On November 21, 2012, plaintiff filed applications for SSI payments and DIB, alleging an onset date of December 6, 2008. AR at 19. Plaintiff asserts that she is disabled due to psychosis, major depressive disorder, post-traumatic stress disorder ("PTSD"), personality disorder, right knee pain, hip pain, tachycardia, high blood pressure, and carpal tunnel syndrome. AR at 47.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 19. Plaintiff requested a hearing, which took place on February 20, 2015. AR at 44-76. On April 27, 2015, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 16-29. Plaintiff's request for review was denied by the Appeals Council, AR at 8-13, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On October 7, 2016, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

# II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

# III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.     EVALUATING DISABILITY

As the claimant, Ms. Mendenhall bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to

REPORT AND RECOMMENDATION - 3

engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d),

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On April 27, 2015, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. It was previously found that the claimant is the unmarried widow of the deceased insured worker and has attained the age of 50. The claimant met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.

3. The prescribed period ends on December 31, 2015.

4. The claimant has not engaged in substantial gainful activity since December 6. 2008, the alleged onset date.

5. The claimant has the following severe impairments: obesity, cervicalgia, arthritis, degenerative joint disease of the left hip, depression, anxiety, status post right knee reconstructive surgery.

REPORT AND RECOMMENDATION - 5

6. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

7. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can lift 20 pounds occasionally and 10 pounds frequently and carry 20 pounds occasionally and 10 pounds frequently. She can sit up to 6 hours in an 8-hour day, and stand and walk up to 6 hours total in an 8-hour day. She can push and pull as much as she can lift and carry. She can occasionally climb ramps and stairs and can never climb ladders or scaffolds. She can occasionally balance, stoop, kneel, and crouch. She can never crawl. She is limited to simple tasks and is limited to routine and repetitive tasks. She is limited to simple work-related decisions. She can occasionally interact with coworkers and can never interact with the public other than incidental contact such as passing people in hallways.

8. The claimant is unable to perform any past relevant work.

9. The claimant was born on XXXXX, 1960 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age.[3]

10. The claimant has at least a high school education and is able to communicate in English.

11. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

12. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

13. The claimant has not been under a disability, as defined in the Social Security Act, from December 6, 2008, through the date of this decision.

AR at 22-28.

---

[3] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in evaluating the opinion of examining physician Dr. Wheeler?

2. Did the ALJ err in evaluating the opinion of examining physician Dr. Cline?

Dkt. 11 at 1; Dkt. 12 at 1.

## VII. DISCUSSION

### A. The ALJ Erred in Evaluating the Medical Opinion Evidence

#### 1. *Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2. Dr. Kimberly Wheeler

Dr. Wheeler examined plaintiff for DSHS in December 2012. AR at 546-49. She assessed numerous marked limitations in plaintiff's ability to adapt to changes in a routine work setting, communicate and perform effectively in a work setting, complete a normal workweek without psychological interruptions, maintain appropriate behavior in a work setting, and set realistic goals. AR at 548. She also assessed moderate limitations in understanding, remembering, and persisting in tasks, learning new tasks, performing routine tasks without special supervision, making simple work-related decisions, and asking simple questions or requesting assistance. AR at 548. On mental status examination, Dr. Wheeler

noted plaintiff to have a dysphoric and anxious mood, winding and derailing speech, and concentration that was adequate in short bursts but routinely derailed during conversation. AR at 548.

The ALJ gave Dr. Wheeler's opinion little weight because "the one-time assessment is not consistent with the other evidence of record. Subsequent records do not describe marked impairment." AR at 26.

The ALJ erred by failing to provide a specific and legitimate reason, supported by substantial evidence, for rejecting Dr. Wheeler's opinion. Without more, the ALJ's conclusory assertion that Dr. Wheeler's opinion was "not consistent with the other evidence of record" does not satisfy the ALJ's obligation to provide specific and legitimate reasons for rejecting the opinion of an examining physician. AR at 26. It is not at all clear what "other evidence of record" or "subsequent records" the ALJ considered to be inconsistent with Dr. Wheeler's opinion that plaintiff has marked impairments, as the record reflects continuing symptoms after the date of Dr. Wheeler's examination. Plaintiff did not even begin to report her hallucinations to her treatment providers until several months after her evaluation with Dr. Wheeler, which suggests a worsening, rather than an improvement, of plaintiff's mental health symptoms. AR at 615 (June 2013 report of hallucinations). Thus, the ALJ's bare assertion that "subsequent records do not describe marked impairment" was not a legally sufficient explanation for the ALJ's rejection of Dr. Wheeler's opinion. Although the Commissioner offers several *post hoc* rationalizations that attempt to intuit what the ALJ may have been thinking in weighing the evidence, the Court must review the ALJ's decision based on the reasoning and factual

findings offered by the ALJ. *See Bray v. Com'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).[4]

Finally, the Court is not persuaded that the fact that Dr. Wheeler performed a "one-time assessment" is a valid reason to reject her conclusions. The Commissioner routinely relies on the opinions of non-examining physicians who have never even met the claimant about whom they are rendering an opinion. Although Dr. Wheeler only met with plaintiff on a single occasion, she administered objective testing and performed a clinical interview, and her opinion was reviewed and adopted by Dr. Carstens. AR at 552.[5]

Accordingly, the ALJ did not provide specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Wheeler's opinions. AR at 26. This error was not harmless, as the hypothetical question posed to the vocational expert did not reflect Dr. Wheeler's opinions regarding all of plaintiff's limitations and restrictions. As a result, this case must be remanded for a reevaluation of the medical opinion evidence, including Dr. Wheeler's opinion.

### 3. R.A. Cline, Psy.D.

In October 2014, Dr. Cline evaluated plaintiff for DSHS and diagnosed major depressive disorder, PTSD, and marijuana use disorder. AR at 556-60. Dr. Cline described

---

[4] The Commissioner selectively quotes from the record in a misleading manner to attempt to justify the ALJ's conclusion. The Commissioner asserts that Dr. Peterson's treatment note provided that plaintiff would be limited for three months and could likely perform sedentary work. Dkt. 12 at 5 (citing AR at 541). In fact, Dr. Peterson stated that plaintiff would be "limited in employability *for a minimum of 3 mo* due to her chronic joint complaints, though it would appear her mental health issues are much more important in the long term and will be addressed separately by her mental health evaluation." AR at 541 (emphasis added).

[5] Dr. Carstens only deviated from Dr. Wheeler's conclusions in the category of "perform routine tasks without special supervision," which Dr. Carstens found indeterminable based upon available evidence. AR at 550, 552.

REPORT AND RECOMMENDATION - 10

plaintiff's symptoms as including moderate to marked psychotic symptoms, as plaintiff "endorses paranoia and visual hallucinations/distortions." AR at 557. In addition to numerous moderate limitations, Dr. Cline opined that plaintiff was markedly limited in her ability to communicate and perform effectively, complete a normal workday and workweek without interruptions from psychological symptoms, and maintain appropriate behavior in a work setting. AR at 558-59. Dr. Cline stated that plaintiff might be able to consider part-time employment or returning to school, but the stress level would have to be extremely low, otherwise her psychotic symptoms were likely to increase. AR at 559.

The ALJ gave Dr. Cline's opinion little weight, because it was "based in part on the claimant's self-report of symptoms, which are not credible in light of the treatment record. Treatment records do not support the described degree of symptoms." AR at 26. For example, the ALJ stated that "treatment records from October 2014 reflect her psychosis was infrequent. Thought and speech were within normal limits. She was focused and tracked well." AR at 26 (citing AR at 563-65).

As a general proposition, an ALJ does not err by rejecting physicians' opinions that rely on a claimant's self-report where the ALJ has properly assessed – and rejected – that claimant's testimony. *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements."). In this case, the ALJ found plaintiff's testimony less than fully credible, AR at 24, and plaintiff does not challenge this finding on appeal. Plaintiff also concedes that Dr. Cline relied to some extent on plaintiff's self-report, but argues that this is "an inherent necessity in mental health assessments" because "objective evidence of a person's emotional state is much less measureable than physical states in many instances." Dkt. 11 at 7.

REPORT AND RECOMMENDATION - 11

Because this case is already being remanded for the ALJ to re-evaluate the medical opinion evidence, it is unnecessary to determine whether the ALJ's treatment of Dr. Cline's opinion, without more, constituted harmful error. On remand, however, the ALJ shall more thoroughly discuss his reasons for rejecting Dr. Cline's opinion and explain what treatment records he believes undermine Dr. Cline's conclusions.

As discussed above with respect to Dr. Wheeler's opinion, the ALJ's conclusory assertion that "treatment records do not support the described degree of symptoms" provides no meaningful basis for the Court to review the ALJ's reasoning. AR at 26. Indeed, the only treatment note cited by the ALJ to support this statement is an October 2014 note in which plaintiff described her psychosis as "infrequent," but then went on to describe other serious and ongoing mental health symptoms. AR at 563. For example, plaintiff stated that she was "isolating herself more and more from others," and explained how "nightmares . . . are preventing her from getting a good night sleep." AR at 563. Plaintiff reported "some fleeting suicidal thoughts," although she did not believe she would act on them, and plaintiff was having "a difficult time following through with her treatment recommendations such as getting exercise, keeping a regular positive journal." AR at 563. Without a more thorough discussion by the ALJ, it is not clear how this October 2014 treatment note undermines all of Dr. Cline's conclusions regarding plaintiff's marked limitations in functioning. Accordingly, the ALJ shall re-evaluate Dr. Cline's opinion on remand, and more thoroughly explain his reasons for rejecting Dr. Cline's opinion, if such a conclusion is warranted.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **April 27, 2017**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **April 28, 2017**.

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 13th day of April, 2017.

*/s/ James P. Donohue*
JAMES P. DONOHUE
Chief United States Magistrate Judge